UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUNGE NORTH AMERICA, INC.,     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | |
| v.     ) | No. 4:21 CV 961 DDN |
|     ) | |
| DANIEL MICKELSON d/b/a SOURCE     ) | |
| ENVIRONMENTAL AND     ) | |
| AGRICULTURE;     ) | |
| OAKLEY TRUCKING, INC.; and     ) | |
| ARKANSAS LIME COMPANY,     ) | |
|     ) | |
| Defendants.     ) | |

## MEMORANDUM AND ORDER

This action is before the Court on the separate motions of defendants Oakley Trucking, Inc. and Arkansas Lime Company (movant-defendants) to dismiss Count 2 of the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, under Rule 12(b)(3) for improper venue, or under 28 U.S.C. § 1406(a) to transfer venue. (Docs. 10, 22.)  The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, due to the diversity of the parties' citizenship and the amount in controversy.  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the reasons set forth below, defendant Oakley Trucking's motion to dismiss is sustained and that of defendant Arkansas Lime is denied.

## BACKGROUND

Plaintiff Bunge North America, Inc., alleges the following in its complaint.  Plaintiff Bunge, a New York corporation with its principal place of business in Missouri, is a participant in the domestic and global agricultural business.  As part of its business, it

"originates" soybeans to crush at its soybean processing facilities, including a facility in Destrehan, Louisiana ("the Destrehan facility" or "plaintiff's facility"); the resulting soybean meal produced at plaintiff's facility is used in various applications and is exported to foreign markets.   Bunge uses bulk calcium carbonate limestone as an anti-caking mechanism in its manufacture of soybean meal.   The calcium carbonate used by Bunge is procured for it by non-movant defendant Source Environmental and Agriculture, a Georgia entity; the calcium carbonate is manufactured by defendant Arkansas Lime Company, an Arkansas corporation; and it is transported from Arkansas Lime to plaintiff's facility by defendant Oakley Trucking, Inc., an Arkansas corporation.   Plaintiff regularly schedules shipments of calcium carbonate for delivery to the Destrehan facility twice a week, pursuant to a master purchase order (P.O.) between plaintiff and defendant Source Environmental.   Among other terms, the P.O. contains a provision that, in the event of litigation, selects the substantive law to be applied and the forum for any judicial action arising out of the purchase order:

> 18.    Governing Law.  This Purchase Order shall be governed by the internal substantive laws of the State of Missouri, without regard to conflicts of law  provisions. . . .  Each party to this purchase order irrevocably submits to the jurisdiction of the United States District Court for the Eastern District of Missouri or the circuit courts located in St. Louis County, Missouri, and each party hereby waives, to the fullest extent permitted by applicable law, any objection to the laying of venue of any action arising out of this Purchase Order in such courts.

(Doc. 1-1 ¶ 18.)  Relevant to the motions to dismiss is the language selecting the judicial venue for this action ("forum selection clause").

On or about August 18, 2020, Bunge received a delivery at the Destrehan facility of product purporting to be calcium carbonate, ordered under the P.O., procured by Source, manufactured by Arkansas Lime, and transported by Oakley Trucking.  Bunge unloaded the product into the Destrehan facility and began using it in its soybean meal manufacturing process.  Approximately one week later, on or about August 25, 2020, Bunge discovered

- 2 -

that the product delivered to the facility on August 18 was not calcium carbonate, but calcium oxide.  Calcium oxide is not acceptable in all countries where plaintiff sells its soybean meal and is "nonconforming" to many of plaintiff's customers.  Because it was manufactured with calcium oxide instead of calcium carbonate, the soybean meal produced at the Destrehan facility between August 18 and August 25, 2020, is alleged to have been "contaminated."  On August 25, 2020, upon discovery of the contaminated meal, Bunge ceased its soybean processing operations at that facility and ceased loading soybean meal onto oceangoing vessels there.

Plaintiff Bunge put defendant Source on notice upon learning of the contamination. In addition, Bunge notified Source on September 17, 2020, that the delivered product was defective and nonconforming with plaintiff's order and/or specifications, and that it would hold Source responsible for its damages.  Bunge alleges upon information and belief that Source then put Arkansas Lime and Oakley Trucking on notice of the claim.

Plaintiff Bunge alleges that, as a result of all three defendants' actions and inactions, it suffered damages in excess of $1.6 million, which include lost production time, diminution in value of the contaminated meal, barge and vessel demurrage costs, lost value of the calcium carbonate that was mixed with the calcium oxide upon delivery, administrative fees, labor, attorneys' fees, and costs.

Plaintiff alleges three claims: breach of contract against defendant Source (Count 1); negligence against all defendants (Count 2); and breach of express and implied warranties against defendant Source (Count 3).  In Count 2, plaintiff alleges defendant Oakley Trucking negligently used inaccurate destination information which caused calcium oxide to be delivered to Bunge's facility; and it alleges defendant Arkansas Lime negligently failed to ensure that calcium carbonate was manufactured and delivered to plaintiff.

Defendants Oakley Trucking and Arkansas Lime each moves to dismiss Count 2 for lack of personal jurisdiction or, in the alternative, for improper venue; in the further alternative they seek a transfer of venue.  (Docs. 10, 22.)

### *Relevant legal principles*

The movant-defendants argue the Court does not have personal jurisdiction over them.  Personal jurisdiction over the parties "flows not from Art. III, but from the Due Process Clause.  The personal jurisdiction requirement recognizes and protects an individual liberty interest. . . .  Thus, the [ultimate] test for personal jurisdiction requires that the maintenance of the suit . . . not offend traditional notions of fair play and substantial justice." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bausites de Guinee*, 456 U.S. 694, 702-03 (1982) (internal quotation marks and citations omitted).

There are "two broad types of personal jurisdiction:  specific jurisdiction and general jurisdiction.  Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state.  General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (citing and quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); and *Sondergard v. Miles, Inc.,* 985 F.2d 1389,  1392 (8th Cir. 1993)) (internal quotation marks omitted).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (citation omitted).  Generally, the Court must make a two-step inquiry.  The first step applies the long-arm statute of the forum state and the second applies the Due Process Clause. *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 909 (8th Cir. 2012).

Plaintiff argues it does not have to establish that the movant-defendants had specific, constitutionally sufficient contact with the State of Missouri because both of them engaged in over 100 deliveries of material to it "pursuant to purchase orders that expressly waived" their lack of personal jurisdiction argument.  (Doc. 27 at 2 (for Oakley);  Doc. 29 at 3-4

(for Arkansas Lime).)   Indeed, the constitutional analysis described above may be obviated by a litigant's waiver of its right to contest personal jurisdiction over it by a forum selection clause:

> In sum, the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. . . . The plaintiff's demonstration of certain historical facts may make clear to the court that it has personal jurisdiction over the defendant as a matter of law—*i.e.,* certain factual showings will have legal consequences . . . .

*Insurance Corp. of Ireland*, 456 U.S. at 704 (continuing to state that the imposition of a sanction under a judicial rule of procedure may support a finding of personal jurisdiction).

"Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotation marks and citations omitted). The court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citation omitted).

### *Complaint's allegations regarding personal jurisdiction and venue*

Plaintiff's complaint alleges in general terms grounds for finding that the Court has personal jurisdiction over all three defendants and that venue is proper in this Court:

> 6. Personal jurisdiction is proper in this Court because, among other reasons, Defendants: knowingly entered into the transaction with Bunge that gave rise to this lawsuit; expressly agreed to submit to the jurisdiction of this Court and/or were so closely related to the dispute or agreement that it was reasonably foreseeable to the Defendants that they agreed to submit to the jurisdiction of this Court; regularly transact business in Missouri; and/or intentionally caused harm through acts that were uniquely or expressly aimed at Bunge in Missouri and which Defendants knew or should have known would be felt or suffered by Bunge in Missouri.

> 7. Venue is proper in this judicial district because, among other reasons, Defendants expressly agreed to submit to the jurisdiction and venue of this Court and/or were so closely related to the dispute or agreement that it was reasonably foreseeable to the Defendants that they agreed to submit to the

jurisdiction and venue of this Court; a substantial part of the events or omissions giving rise to the claims at issue in this lawsuit occurred in this district; the agreement underlying the claims was formed in this judicial district; and the harm was felt or suffered by Bunge in this judicial district.

(Doc. 1 at 2.)   Plaintiff and movant-defendants have submitted proffers of relevant information that are factually more specific than plaintiff's allegations.

### *Plaintiff's factual proffer*

In its responses (Docs. 27 and 29) to movant-defendants' motions to dismiss, plaintiff filed the declaration of Christie M. Trench, plaintiff's purchasing agent, dated October 18, 2021.  To her declaration are attached relevant Purchase Orders and bills of lading for the 100+ deliveries of calcium carbonate limestone and the one delivery of the non-conforming calcium oxide from Arkansas Lime by Oakley to Bunge's facility between April 10, 2020, and August 23, 2021.

### *Plaintiff's purchase orders*

The relevant Bunge-issued purchase order form showed Bunge as the purchaser, Source Environmental and Agriculture as the vendor, and Bunge North America in Destrehan, LA, as the shipment destination.  The front side of the purchase order form itself stated it was "FOR BILLING PURPOSES ONLY" and directed that the "P.O. number must appear on all shipments, invoices, and documents."  The back of the form contained the following provision:

> 18.   Governing Law.  This Purchase Order shall be governed  by the internal substantive laws of the State of Missouri, without regard to conflicts of law provisions.  . . . Each party to this purchase order irrevocably submits to the jurisdiction of the United States District Court for the Eastern District of Missouri or the circuit courts located in St. Louis County, Missouri, and each party hereby waives, to the fullest extent permitted by applicable law, any objection to the laying of venue of any action arising out of this Purchase Order in such courts.

The language of the purchase order makes no mention of any other entity contributing to defendant Source's performance under the purchase order, such as the source of the material Source was obligated to ship to plaintiff and the entity transporting the material. (Doc. 27-5.)

### *Arkansas Lime's bills of lading*

Plaintiff alleges Source Environmental agreed with Arkansas Lime that Arkansas Lime would provide the material needed for performance of the purchase orders. Such is apparent on the faces of the bills of lading. Each of the bills of lading attached to Ms. Trench's declaration was issued by Arkansas Lime Company and bears its mast-head logo. All but one (discussed below) indicated the respective load was sold to Source Environmental for release to "Bunge Corp." at "Destrehan, LA," with Oakley Trucking as the carrier. Each bill of lading was signed by the Oakley driver who delivered the respective shipment and by a representative of plaintiff. Deliveries were made pursuant to Purchase Orders 4102188898, 4102153749, and 4102584264.

### **Defendants' factual proffer**

Arkansas Lime, in support of its motion to dismiss, submitted the affidavit of Michael Wiedemer, its vice president and chief financial officer. This affidavit states the following. Arkansas Lime is organized under the laws of Arkansas with its principal place of business in Batesville, Arkansas. Arkansas Lime operates a limestone quarry, it is not licensed or registered to do business in Missouri, and it has no quarry or production facility, offices, bank accounts, real property, registered agent, or employees in Missouri. His affidavit further states that none of the events described in the complaint took place in Missouri. Arkansas Lime did not enter any contract in Missouri with plaintiff or any co-defendant regarding the activities stated in the complaint. Further, from 2018 to July 31, 2021, Arkansas Lime's annual revenue and annual sales attributable to its activities in Missouri were each between .3% and .5%. (Doc. 22-3.)

Oakley Trucking relies on the facts otherwise proffered by Bunge and Arkansas Lime, *e.g.,* that it is not a party to the Purchase Order, including the language of the PO's

paragraph 18, that it did not perform any act in Missouri that gave rise to this litigation, and that it does not have any organizational or agency relationship with plaintiff or Source, the parties to the PO.  (Doc. 30 at 2.)

## DISCUSSION

As stated above, "[d]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (citations omitted).  In this case, the defendant-movants are not signatories to any PO that contains the paragraph 18 forum selection clause.    However, "[a] third party will be bound to a forum selection clause only when the third party is closely related to the dispute such that it becomes foreseeable that it will be bound."  *Kleiman v. Kings Point Cap. Mgmt., LLC*, No. 4:17 CV 2278 HEA, 2018 WL 3328012 at *4 (E.D. Mo. July 6, 2018) (ruling that plaintiff was sufficiently closely related to the signatories of the forum selection clause and to the cause of action to be bound by the forum selection clause) (citing *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001)).

Plaintiff asserts the "closely related" doctrine to establish that this Court has personal jurisdiction over defendants Oakley Trucking and Arkansas Lime.  More specifically, plaintiff argues they are so closely related to the purchase order that it was foreseeable that they would be bound by its forum selection clause, and each of them derived a financial benefit from and had a close business relationship with the parties to the purchase order.  The Court concludes that the "closely related" doctrine establishes personal jurisdiction over defendant Arkansas Lime, but not over Oakley Trucking.

"What it means to be 'closely related,' or 'foreseeable' is not self-evident."  *United States, ex rel. Lighting and Power Servs., Inc. v. Interface Const. Corp.*, No. 4:07 CV 1144 DDN, 2007 WL 2710030, at *6 (E.D. Mo. Sept. 11, 2007) (citation omitted).  An analysis of what "closely related" and "foreseeable" mean should be grounded in the requirements of the Due Process Clause: minimum contacts between the defendant and the forum state such that the suit does not offend the traditional notions of fair play and substantial justice.

U.S. Const. amend. XIV; *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). Decisions in the Eighth Circuit applying the "closely related" test refer to the relationships of the parties to the cause of action and to the signatories of relevant documents. *See Marano*, 254 F.3d at 757; *Kleiman*, 2018 WL 3328012 at *4-5; *TLC Vision (USA) Corp. v. Freeman*, No. 4:12 CV 1855 ERW, 2013 WL 230254 at *11 (E.D. Mo. Jan. 22, 2013).

The federal district court in *Synthes, Inc. v. Emerge Med., Inc.* 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012), collected case examples of facts involving non-signatories who were determined to be sufficiently closely-related to apply forum selection clauses, including the following:

1.     third-party beneficiary status expressly imposed on specific non-signatory by the relevant contract, *D'Elia v. Grand Caribbean Co., Ltd.,* No. 09 CV 1707, 2010 WL 1372027 (D.N.J. Mar. 30, 2010) (ruling that incidental third-party beneficiary is not bound by forum selection clause);

2.     third-party beneficiary status, parent company to a contracting party, corporations owned and controlled by contracting party, *Hay Acquisition, Co. I, Inc. v. Schneider*, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005);

3.     insurer-subrogee relationship, *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.,* No. 5:01 CV 0882, 2007 WL 2891981 (N.D.N.Y. Sept. 28, 2007); and

4.     third-party with financial benefit from contract, *Affiliated Mortg. Prot., LLC v. Tareen,* No. CIV.A.06-4908, 2007 WL 203947, at *3-4 (D.N.J. Jan. 27, 2007) (ruling that the non-signatories were "closely related" to the contractual relationship because they were employees of the signatory company).

The court in *Synthes, Inc.* distilled the principle these cases conveyed thus: "[T]he close business relationships between the signatories and non-signatories to the pertinent agreements, together with the fact that the dispute among the parties centered on the interpretation of the agreements, provided a sufficient basis on which to apply the forum selection clauses to the non-signatory."  887 F. Supp. 2d at 610.

***Defendant Arkansas Lime***

The record before the Court is sufficient to establish that Arkansas Lime was sufficiently "closely related" to the signatories of the purchase orders and the dispute sued on here to warrant the application of the forum selection clause, thereby obviating further constitutional analysis.

The language of the purchase order does not create an express third-party beneficiary status for either of the movant-defendants. The language of the purchase order does not clearly express the intent of Bunge and Source Environmental to benefit by name either Arkansas Lime or Oakley Trucking or "an identifiable class of which [either] is a member." *Thieret Fam., LLC v. Delta Plains Servs., LLC,* No. ED 109440, 2021 WL 5313021, at *4 (Mo. Ct. App. Nov. 16, 2021) (internal quotation marks omitted). "Furthermore, a mere incidental benefit to the third party is insufficient to bind that party." *Id.* (internal quotation marks omitted).

However, the language of the bills of lading, issued by Arkansas Lime, under the circumstances alleged by plaintiff in its complaint and as described by the record so far, is sufficient to alert Arkansas Lime to the fact that it could be haled into this federal court or a Missouri circuit court for the dispute alleged in plaintiff's complaint. Arkansas Lime, in compliance with the purchase order, included on its bills of lading the respective purchase order numbers, thereby acknowledging the purchase order's paragraph 18 forum selection clause. Together, the language of the purchase order and that of its bills of lading indicate that Arkansas Lime knew it had contracted (albeit with Source Environmental) to be the source of the calcium carbonate that was the subject matter of the purchase order and that the receiving customer would be Bunge at its Destrehan facility. While it was not a direct signatory of the purchase order, it does not offend the "traditional notions of fair play and substantial justice," *Insurance Corp. of Ireland, Ltd.,* 456 U.S. at 703 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(internal quotation marks omitted), for Arkansas Lime to be haled into a court that was indicated by purchase order paragraph 18. This conclusion is bolstered by the fact that Arkansas Lime continued to

– 10 –

operate under the purchase orders that contained the paragraph 18 forum selection clause over one hundred times, twice a week for over a year.

For these reasons, the motion of Arkansas Lime to dismiss plaintiff's complaint for lack of personal jurisdiction is denied.

### ***Defendant Oakley Trucking***

The same cannot be said for plaintiff's case against defendant Oakley Trucking. Oakley was not a signatory to the purchase order. As factually indicated by Christie Trench's declaration, Oakley's business relationship was with Arkansas Lime as its carrier with the duty to deliver the limestone material to plaintiff's facility in Louisiana.  Nothing in the record binds Oakley Trucking to the purchase order that contains the forum selection clause asserted by plaintiff.  While Oakley Trucking frequently transported Arkansas Lime product to plaintiff's facility in Louisiana pursuant to bills of lading bearing the numbers of purchase orders that included the asserted forum selection clause, the record indicates that such may not have been the case for the shipment of the nonconforming calcium oxide.

An examination of the bills of lading issued to Oakley Trucking by Arkansas Lime, provided to the Court by plaintiff, (Doc. 27-2), indicates that the bill of lading apparently related to the August 18, 2020 delivery of the non-conforming calcium oxide, bill of lading No. 3349339, bears a purchase order number of 3322, not 4102188898.  (Doc. 27-2 at 35.) Nothing in the record indicates specifically that P.O. 3322 contains the same forum selection clause found on the other purchase orders identified by plaintiff.  Bill of lading No. 3349339 states:  the shipped material is "Bulk Quicklime"[1]; the purchasing customer is Kimes Construction Co., not Source Environmental; the scheduled delivery date is August 18, 2020; the location for delivery is an Amazon site in Canton, Mississippi, not plaintiff's facility in Louisiana; Oakley Trucking is the carrier; the driver signed the bill of lading; and plaintiff's representative also signed bill of lading No. 3349339.  (Docs. 27-2 at 19, 34, 35, 40.)

---

[1] The Court takes judicial notice that calcium oxide is commonly known as quicklime.  *See* https://en.wikipedia.org/wiki/Calcium_oxide; Fed. R. Evid. 201.

Upon this record, irrespective of the potential merits of plaintiff's claim against Oakley Trucking, the Court concludes that plaintiff has not established a prima facie case for the imposition of personal jurisdiction over that defendant by this Court.    Oakley Trucking was merely an indirect, incidental beneficiary of the purchase order relationship between plaintiff and Source Environmental; its only substantial business relationship in the context of plaintiff's complaint was with Arkansas Lime; and it had no substantial contact with Missouri.    Count 2 of plaintiff's complaint is dismissed without prejudice against Oakley Trucking.[2]

### *Venue*

Defendant Arkansas Lime moves to dismiss also for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1406. It argues it would be unreasonable, unfair, and unjust to enforce the forum selection clause against it, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).  (Doc. 35 at 12.)

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  *Atl. Marine Const. Co., Inc. v. United States Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (cleaned up) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

In support of the argument that it would be unreasonable, unfair, and unjust to enforce the forum selection clause against it, Arkansas Lime reasserts the arguments raised above. (Doc. 35 at 12.)  It points out it did not negotiate or sign the forum selection clause and the terms of the purchase order do not expressly include subcontractors.  (*Id.* at 13.) Arkansas Lime cites the Eastern District of Arkansas as the appropriate venue for this case,

---

[2] Thus, there is no need for the Court to consider Oakley Trucking's venue arguments.

as that district encompasses its principal place of business and the location of the manufacture and shipping of the nonconforming material.  (Doc. 23 at 11-12.)

The forum selection clause in this case states that "each party hereby waives, to the fullest extent permitted by applicable law, any objection to the laying of venue of any action arising out of this Purchase Order" in the Eastern District of Missouri.  (Doc. 1-1 ¶ 18.)  As discussed above, despite being a non-signatory of the forum selection clause, Arkansas Lime is so closely related to the cause of action and that it is bound by the forum selection clause.  Other than its arguments against being bound by the forum selection clause in the first instance, it presents no exceptional circumstances that warrant it not being subject to that clause.  *See Atl. Marine*, 571 U.S. at 63.  The fact that venue would also lie in Arkansas does not make venue in this Court, pursuant to the forum selection clause, wrong or improper.  *See id.* at 55-56 (distinguishing the "wrong" or "improper" analysis under § 1406(a) from the forum selection clause analysis).  The Court therefore denies Arkansas Lime's motion to dismiss for improper venue or to transfer venue.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant Oakley Trucking, Inc. to dismiss for lack of personal jurisdiction **(Doc. 10) is sustained.**  Count 2 of plaintiff's complaint is dismissed against defendant Oakley Trucking, Inc., without prejudice.

**IT IS FURTHER ORDERED** that the motion of defendant Arkansas Lime Company to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss for improper venue, or to transfer venue **(Doc. 22) is denied.**

_____/s/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 28, 2022.